# Ex Parte Thomas.

## Apelación procedente de la Corte de Distrito de Ponce.

### No. 76.—Resuelto en junio 4, 1907.

Habeas Corpus—Sentencia Nula ó Meramente Errónea.—Aunque meras irregularidades de procedimiento, ó errores de derecho, cometidos en el juicio y fallo de una causa, no pueden ser discutidos en un procedimiento de *habeas corpus*, se establece, sin embargo, una diferencia entre aquellos casos en que la sentencia es meramente errónea y aquéllos en que debe considerarse nula, por razón de algún defecto ó irregularidad.

Id.—Cuestiones de Jurisdicción.—Cuestiones que afecten la jurisdicción del Juez ó Tribunal para dictar una sentencia determinada son cuestiones propias para ser discutidas en procedimiento de *habeas corpus*.

Id.—La Corte debe tener jurisdicción, no solo sobre la persona del acusado y sobre el delito, sino también sobre el delito determinado que se hubiere imputado al acusado.

Id.—Partícipes en los Crímenes—Autor y Cómplice.—Con arreglo á nuestro estatuto, el cómplice es aquél que en derecho común se consideraba, como *cómplice después del hecho;* aquéllos que en el derecho común estaban clasificados como *cómplices antes del hecho,* son, con arreglo al Código Penal, *autores ó principales.*

Id.—Convicción Como Cómplice con una Acusación Como Autor.—El delito cometido por el cómplice es distinto del cometido por el autor ó principal, y, por consiguiente, un acusado no puede ser convicto como cómplice, por virtud

de una acusación en que se le impute la comisión del delito como autor; para que la Corte adquiera jurisdicción es necesario que se presente una acusación contra el acusado como cómplice, pues la Corte carece de jurisdicción sobre cualquier delito que no estuviere comprendido en la acusación.

Id.—CONSENTIMIENTO DEL ACUSADO.—El mero consentimiento del acusado para que se le condene como cómplice, estando acusado como principal, no es suficiente para conferir jurisdicción á la Corte.

Id.—EXPOSICIÓN ANTERIOR POR EL MISMO DELITO.—Condenado un acusado como cómplice, con una acusación como autor, y declarada nula la sentencia, no podrá alegar después, al formularse nueva acusación contra él como cómplice, el haber estado expuesto por el mismo delito.

Los hechos están expresados en la opinión.

Abogado del peticionario: *Sr. José Guzmán Benitez.*

Abogado del Pueblo: *Sr. Rossy, Fiscal.*

EL JUEZ ASOCIADO SR. WOLF emitió la opinión del tribunal.

José de Thomas presentó una solicitud á este Tribunal interesando que se expidiera un auto de *habeas corpus.* Se expidió desde luego el mandamiento y se ordenó que se devolviera diligenciado á la Corte de Distrito de Ponce. La solicitud expresa substancialmente que el prisionero estaba encarcelado en la cárcel de Distrito de Ponce, bajo la custodia de Adolfo Lespier, que lo retenía por virtud de una sentencia dictada por la Corte de Distrito de Humacao, condenándole á siete años de Presidio; que dicho José de Thomas fué acusado ante dicha Corte como autor del delito de asesinato en primer grado cometido en la persona de Angel Romero, y que el Jurado, después de oir y considerar la prueba practicada ante el mismo durante el juicio oral, dictó veredicto contra José de Thomas, declarándole culpable como cómplice del delito de homicidio, y que la Corte de Distrito de Humacao dictó sentencia condenando á dicho José de Thomas como tal cómplice del delito de homicidio á sufrir siete años de prisión en la penitenciaría; que el veredicto del Jurado, así como la sentencia dictada por la Corte de Distrito de Humacao y el mandamiento expedido para la prisión de José de Thomas, son ilegales y nulos, porque la acusación no expresaba específicamente la participación de dicho José de Thomas, acusado entonces del delito de asesinato, como tal cómplice, ni su

responsabilidad en este sentido, y que en su consecuencia el veredicto y la sentencia no estaban de acuerdo con la acusación y el mandamiento no podía estar autorizado por una sentencia que es nula, según lo resuelto por el Tribunal Supremo de Puerto Rico, en su sentencia de 1º. de febrero de 1907, en el caso de *"El Pueblo de Puerto Rico v. Antonio Paz y Santos."*

El Alcaide Adolfo Lespier, al devolver el mandamiento, mostró que retenía al prisionero por virtud de una sentencia que, copiada á la letra, es como sigue:

"Estados Unidos de América. El Presidente de los Estados Unidos, ss., En el nombre y por la autoridad del Pueblo de Puerto Rico. *El Pueblo de Puerto Rico v. José de Thomas.* Delito: Asesinato en Primer Grado. En la Corte de Distrito de Humacao. Sentencia.— Esta causa ha venido ante la corte, en virtud del señalamiento previamente hecho para el día 20 de marzo, hallándose presente el Sr. Fiscal J. E. Aponte, en representación del Pueblo de Puerto Rico, y el acusado José de Thomas, por su propia persona y por sus abogados José de Guzmán Benitez y Ulpiano Valdéz, habiéndose celebrado el acto de *arraignment* contra dicho acusado por el delito de asesinato en primer grado, en cuyo acto el acusado, en propia persona, hizo la alegación de no culpable disponiendo la ley que sea juzgado por un jurado, y habiendo surgido de dicha alegación las cuestiones litigiosas, fué señalada la vista del juicio para el día 20 del actual, en cuyo tiempo, estando presente un jurado de hombres buenos y legales, que instruído para oir las cuestiones litigiosas y rendir un veredicto recto, de acuerdo con la ley y la prueba, se ha retirado á deliberar, trayendo el siguiente veredicto: "Nosotros, el Jurado, encontramos al acusado José de Thomas, culpable como cómplice del delito de homicidio voluntario." Y habiéndose preguntado al acusado si existe cualquiera causa ó motivo que impida el pronunciamiento de la sentencia, á lo cual ha contestado negativamente.—Por lo tanto, la Corte ordena, adjudica y decreta que al acusado José de Thomas, convicto como cómplice del delito de homicidio voluntario, sufra la pena de siete años de presidio con trabajos forzados en la Penitenciaría de San Juan de Puerto Rico, y las costas del juicio.—Dada en Humacao, bajo mi firma, á los veinte y ocho días del mes de marzo de mil novecientos cinco. —J. A. Erwin, Juez de la Corte de Distrito de Humacao. Testifico: Enrique Rincón, Secretario de la Corte de Distrito."

El informe del Alcaide continúa expresando que la ante-
rior sentencia fué apelada para ante el Tribunal Supremo
y confirmada por ese Tribunal, y que se ordenó su ejecución,
por virtud de la cual, y de acuerdo con el artículo 330 del Có-
digo de Enjuiciamiento Criminal, la prisión empezó el día 30
de diciembre de 1905.

En la vista que tuvo lugar ante la Corte de Distrito de
Ponce se presentaron ciertos documentos conteniendo la opi-
nión del Tribunal Supremo dictada en la causa que fué
apelada por el peticionario y también la dictada en el caso de
*El Pueblo de Puerto Rico* v. *Antonio Paz y Santos* que fué
resuelto el día 21 de febrero de 1907.

La Corte de Distrito de Ponce denegó la petición de *habeas
corpus* con fecha 11 de marzo de 1907 y el caso se presentó
ante esta corte, por virtud de una apelación.   En su informe,
ante este tribunal, el fiscal alegó que era doctrina estable-
cida por la Jurisprudencia del Tribunal Supremo de los Es-
tados Unidos, así como por la resolución de este Tribunal
en el caso de *Ex Parte Hobard S. Bird,* que cuando una per-
sona está encarcelada en la Penitenciaría, por virtud de una
sentencia dictada por un Tribunal que tenga jurisdicción so-
bre la persona y sobre el delito, la legalidad de su prisión no
puede ser impugnada colateral ó indirectamente por medio
de un procedimiento de *habeas corpus.*   Indudablemente que
es esta la fórmula general de un principio amplísimo.   Ha
sido establecido repetidas veces que el auto de *habeas corpus*
no puede utilizarse á los efectos de un auto por causa de error
ó de una apelación, y que meras irregularidades de procedi-
miento, ó errores de derecho cometidos durante la celebración
del juicio oral ó en la resolución de un caso no pueden ser
examinadas, por virtud de este procedimiento.   12 American
& English Encyclopedia of Law, pp 246-247; Bailey sobre
jurisdicción, secciones 24, 25 y 26; *Ex parte Parks,* 93 U. S., 18
y casos allí citados; *Ex parte Hollis,* 59 Cal., 405, 407; *United
States* v. *Pridgeon,* 153 U. S., 48, y casos citados.

Se hace sin embargo una distinción entre aquellos casos que son meramente irregulares ó erróneos y aquellos en que la sentencia debe ser considerada nula, por virtud de algún defecto á los efectos de una impugnación por el procedimiento colateral ó indirecto; no parece haberse hecho distinción alguna por los Tribunales entre una sentencia dictada en un asunto civil y una pronunciada en causa criminal. Véase la nota del caso de *Morrill* v. *Morrill,* 23 Am. St. Rep. p. 110; *Tenney* v. *Taylor,* 1 App. G. C. 227; *United States* v. *Pridgeon,* 153 U. S. 48; *Windsor* v. *Mc Veigh,* 93 U. S. 282; *Russell* v. *Shurleff,* 28 Colo. 414; 89 Am. St., Rep. 216; y nota en la página 221.

Con respecto á las sentencias dictadas en causas criminales, hay dos casos que constituyen una autoridad en la materia, y que son los de *El Pueblo* v. *Liscomb,* 60 N. Y., 571; 19 Am., Rep. 211; y el caso de *Ex parte Lange,* que se encuentra en el tomo 18 Wall. pág. 163. En el caso de *Ex parte Lange,* la ley autorizaba la pena de multa ó prisión y la Corte impuso una sentencia de multa y prisión. La multa se pagó y en el mismo término la corte trató de modificar la sentencia, imponiendo prisión, en vez de la primera sentencia de multa y prisión. La corte en su opinión, después de ocuparse de las sentencias en general y de los errores ó irregularidades de las sentencias en particular, dice:

"Pero se ha dicho que aún concediendo todo esto la sentencia, por virtud de la cual está detenido el prisionero es errónea, pero no nula; y como esta corte no puede revisar esa sentencia por motivos de error, solamente puede excarcelar al prisionero en los casos en que sea nula.

"Pero no estamos de acuerdo con la premisa principal de este argumento. Una sentencia puede ser errónea y nó nula, y puede ser errónea porque es nula. Las diferencias entre una sentencia nula y una que simplemente pueda ser anulada son muy poco perceptibles, y, según el punto de vista bajo el cual se las considere pueden caer dentro de una ú otra clasificación.

"Opinamos que cuando un prisionero ha sufrido completamente una de las penas alternativas á que solamente la ley le sujetaba por razón de una sentencia válida, como sucede en este caso, el tribunal pier-

de toda facultad para imponerle otro castigo.  El principio que hemos discutido interpone entonces su protección é impide que el acusado sea castigado otra vez por ese delito.  El récord de los procedimientos de la corte, cuando se dictó la segunda sentencia, muestra que en ese mismo caso, y por ese mismo delito, el acusado había cumplido y sufrido enteramente uno de los castigos que la ley prescribe para ese delito, y que había sufrido cinco días de prisión á causa del otro.  Muestra así que las facultades del tribunal para castigarle por el mismo delito habían· cesado.  Á no ser que sea nula toda la doctrina establecida en nuestro sistema de jurisprudencia, tanto constitucional como del derecho común sobre protección de los derechos personales, en ese sentido, la autoridad que tenía la corte para castigar al acusado había cesado.  Sus facultades habían terminado y el ejercicio de las mismas le estaba prohibido en adelante.  Fué un error, pero fué un error, porque las facultades para dictar otra sentencia no existían.

"No se contesta á este argumento, alegando que de acuerdo con la ley, el tribunal tenía jurisdicción sobre la persona del acusado y sobre el delito.  De aquí no puede deducirse en modo alguno que estos dos requisitos den validez á cualquier sentencia que la corte pueda dictar en casos semejantes, á pesar de lo errónea que pueda ser.  Si un juez de paz que tenga competencia para imponer una multa por la comisión de un *misdemeanor*, y teniendo ante sí debidamente á la parte acusada por su comisión, dictara sentencia, ordenando que se le colgara esa sentencia sería simplemente nula.  ¿Por qué sería nula?  Porque no tenía facultades para dictar semejante sentencia.  De la misma manera si un tribunal de jurisdicción general, con una acusación por libelo, dictara una sentencia de muerte, ó de confiscación de bienes, sería nula por la misma razón.  Ó si con una acusación por traición, la corte dictara sentencia, declarando convicto al acusado del delito de alta traición, y ordenando por ella que los herederos del criminal no heredaren sus bienes, los cuales declara la sentencia que deben ser confiscados á favor del Estado, esa sentencia sería nula con respecto á la prohibición de heredar y á la confiscación de los bienes á favor del Estado, por haber extralimitado la corte su autoridad y estar prohibida semejante sentencia por la Constitución."

En el caso de *Windsor* v. *Mc Veigh,* que se encuentra en el tomo 93 U. S. p. 282, el Tribunal Supremo, dice:

"La doctrina invocada por el abogado de que una vez que un tribunal ha adquirido jurisdicción, tiene la facultad de resolver todas las cuestiones que surjan en el caso, y que su sentencia, á pesar de lo erró-

nea que pueda ser, no puede impugnarse colateral ó indirectamente, es indudablemente correcta como una proposición ó principio general, pero, como toda proposición general, está sujeta á muchas modificaciones en su aplicación. Todos los tribunales, aún los más altos, tienen su jurisdicción más ó menos limitada: están limitados á determinadas clases de acciones, tales como civiles ó criminales; ó á determinados modos de administrar justicia tales como el legal ó el de equidad; ó á asuntos de un carácter especial, tales como aquellos que surgen en las aguas navegables, ó se refieren á disposiciones testamentarias de bienes; ó al uso de un procedimiento determinado para dar ejecución á su sentencia. *Norton* v. *Meador,* Corte de Circuito de California. Aunque la corte posea jurisdicción de una causa, de la materia, y sobre las partes, está, sin embargo, limitada en su sistema de procedimiento y en la extensión y naturaleza de su sentencia. Debe actuar judicialmente en todo sentido y no puede entonces extralimitar las facultades que la ley le concede. Si por ejemplo se trata de una acción en cobro de pesos, el tribunal, á pesar de su completa jurisdicción sobre la materia y las partes, no tiene facultad para imponer al demandado una sentencia de prisión en la Penitenciaría. Si se tratare de una acción por libelo ó por daño personal, la corte no puede ordenar en ese caso el estricto cumplimiento de un contrato. Si se tratare de una acción sobre posesión de bienes inmuebles, la corte no tiene facultad alguna para admitir en ese caso la prueba de un testamento. Ejemplos de esta naturaleza muestran que la doctrina general á que se refiere el abogado está sujeta á muchas modificaciones. Las sentencias referidas, dictadas en los casos que hemos supuesto, no serían meramente erróneas, serían absolutamente nulas; porque la corte que las dictara excedería los límites de su autoridad en aquellos casos. Véase la forma en que se expresa el Juez Asociado Sr. Miller, con respecto al particular, en el caso de Ex-parte Lange, 18 Wall., 163. De igual manera se estableció por este Tribunal en el caso de Bigelow v. Forrest, 9 id. 351, que una sentencia en caso de confiscación, que decretó la confiscación del derecho de propiedad sobre la finca era nula, en cuanto al remanente, después de haber terminado el derecho vitalicio del propietario. Á la objeción de que el decreto era concluyente, en cuanto á que el derecho de propiedad íntegro había sido confiscado, el Juez Asociado, Sr. Strong, al emitir la unánime opinión del tribunal, contestó: 'indudablemente que un decreto de una corte que tenga jurisdicción para dictarlo, no puede ser impugnado colateral ó indirectamente; pero, con arreglo á la ley del Congreso, la Corte de Distrito no tenía facultad para ordenar una venta que confiriera al comprador derechos que

tuvieran un término de duración mayor que el de la vida de French Forrest (el propietario). Si así lo hubiera hecho, hubiera extralimitado su jurisdicción.' Id. 350.''

En el caso de *Ex parte Bain,* 121 U. S. 13-14, hubo una enmienda á una acusación sin que hubiera sido presentada de nuevo por el Gran Jurado. El procedimiento fué inpugnado en *habeas corpus,* y el Tribunal Supremo dice:

''Bajo tales circumstancias de nada sirve decir que la corte conserva, sin embargo, jurisdicción sobre la persona y el delito, porque, aunque tiene á la persona en su poder, y tendría jurisdicción sobre el delito, si se le hubiera conferido debidamente por medio de una acusación, la jurisdicción sobre el delito ha cesado y el tribunal no tiene facultades para seguir conociendo del caso por falta de una acusación.''

Y la corte cita los casos de *Ex parte Lange,* 18 Wall., 163. *Ex parte Parks,* 93 U. S., 18. *Ex parte Wilson,* 114 U. S., 417.

En el caso de *United States* v. *Walker,* 109 U. S., 258, en que se aprobó lo resuelto en el caso de *Ex parte Lange,* la Corte, al declarar nula una orden dictada por la Corte del Distrito de Columbia, que tiene jurisdicción en materia de testamentos, dice:

''No se contesta á esto diciendo que la corte tenía jurisdicción sobre la persona del prisionero, y sobre el delito, con arreglo á la ley. De ninguna manera ha de seguirse que estos dos hechos den validez á cualquier sentencia que la corte pueda dictar en casos semejantes, cualesquiera que fueran los errores que contenga.

Un cierto número de autoridades sostiene que en todo los casos la jurisdicción de un tribunal ó juez para dictar una sentencia determinada es materia que puede ser propiamente investigada en un procedimiento de *habeas corpus.* Las autoridades se encuentran en una nota á *Koopke* v. *Hill,* 87 Am St., Rep. pp. 172 y 173. De igual modo hay una amplia discusión sobre la cuestión de jurisdicción en el caso de *Ex parte Cox,* 3 Idaho 530. El estatuto de Idaho sobre *habeas corpus* es igual al nuestro. La sentencia en el caso de *Ex parte Cox*

se declaró nula debido á un exceso en el número de años de prisión señalados al prisionero.

Irregularidades y errores de todo género han sido sometidos á la consideración de los tribunales en procedimientos de *habeas corpus*. Parece que no se ha planteado la verdadera cuestión que en este caso se presenta para su examen, ó sea, si una persona acusada como autor y declarada convicta como cómplice podría sostener que en la sentencia en este caso era nula y no meramente errónea. Que tal sentencia es errónea, ha sido establecida fuera de toda duda por este Tribunal en el caso de *El Pueblo* v. *Antonio Paz y Santos*. En ese caso se cita mucha jurisprudencia de Tejas, pero las decisiones del Tribunal Supremo de California se pronuncian en el mismo sentido.

En el caso de *Ex parte Hobart S. Bird,* este tribunal tuvo presente la distinción que se hizo entre sentencias nulas y aquéllas que son meramente erróneas al decir:

"Del examen de estas secciones resulta claramente que la única sección aplicable á este caso es el primer párrafo de la sección 483, por la que se declara que "cuando se haya excedido la jurisdicción de tal tribunal ó funcionario" se podrá poner en libertad al acusado. No puede haber duda después de una revista minuciosa de todos los autos, y de las razones alegadas por el peticionario para que se le ponga en libertad, que en este caso el Tribunal de Distrito tenía jurisdicción sobre el delito denunciado, sobre la persona del acusado y sobre el asunto de que se trataba en esta causa, que no se había excedido la jurisdicción en lo más mínimo, y que el Tribunal Supremo tenía jurisdicción de apelación para decidir dicho asunto al interponerse el recurso de apelación.

No se ha demostrado nada en la solicitud ni en el alegato que pueda atacar con éxito esta jurisdicción ó la forma en que se ha ejercido, y tanto por esta razón, cuanto por otras expresadas en la presente, la solicitud no puede prevalecer."

Así se verá que este Tribunal reconoció que deben existir tres elementos: jurisdicción sobre la persona del acusado, sobre el delito y sobre el delito determinado de que se acuse.

En el caso de *El Pueblo* v. *Liscomb*, supra, la corte en una opinión emitida por el Juez Asociado Sr. Allen, cita el caso de *Ex parte Lange*, y dice:

"El Sr. Gill, en sus valuables comentarios al caso de McLeod, 3 Gill, 647, ha resumido cuidadosamente, y con su acostumbrada precisión, la ley referente al procedimiento de *Habeas Corpus,* y señalando los puntos en que los Estatutos de este Estado se apartan del derecho común, y las premisas anunciadas por él están bien establecidas por las autoridades citadas en la nota, y en cuanto tienen aplicación al presente caso pueden ser brevemente expuestas. Tanto por el Derecho común, como con arreglo á los Estatutos de este Estado, si la parte está detenida, por virtud de un mandamiento, la existencia y validez de tal mandamiento son las únicas cuestiones en discusión, y el derecho de investigar la validez del mandamiento tiene la misma extensión que aquel que se concede en una acción por prisión ilegal. Si de la faz del mandamiento aparece su validez, se considerará legal *prima facie,* y el prisionero debe asumir el peso de impugnar su validez probando que ha habido falta de jurisdicción. Errores, irregularidades, ó faltas de forma, no constituyen objeción alguna; ni lo es ningún defecto que pueda ser enmendado ó remediado por el tribunal que lo expidiera. Sino hubo una facultad legal para dictar la sentencia ó decreto, ó expedir el mandamiento, no hubo tribunal competente, y, por consiguiente, no hubo sentencia ó mandamiento. Todo es nulo y *coram non judice.*"

En una opinión concurrente el Juez Asociado, Sr. Rapallo, dice:

"Se ha sugerido que, con arreglo á nuestro estatuto, una persona detenida, por virtud de una sentencia ó decreto definitivo dictado por un tribunal *competente,* con jurisdicción en lo civil ó en lo criminal, está excluído de gozar los beneficios de este mandamiento. En mi opinión esa objeción está suficientemente contestada en el Dictamen de mi ilustrado compañero Allen. Según los términos en que aparece concebida le ley, la corte que dictara la sentencia definitiva, por virtud de la cual estuviere detenido el prisionero, debe ser, no solamente una corte de jurisdicción en lo civil ó en lo criminal, sino también debe ser competente. Esta palabra no tendría efecto alguno á no ser que significara competente para dictar tal sentencia."

Así se verá que la ley, bajo la cual la Corte de New York estaba funcionando, es idéntica, en realidad, á la sección 482 de nuestro propio Código de Enjuiciamiento Criminal.

Los hechos del caso son que el promovente Tweed, que fué juzgado, por virtud de una acusación que contenía doscientos veinte cargos distintos, fué declarado culpable de doscientos cuatro cargos, y por doce de esos cargos fué sentenciado á doce términos sucesivos de prisión de un año cada uno, y á pagar una multa de doscientos cincuenta dollars por cada uno de dichos cargos; y por otros cargos fué condenado á pagar dos multas más, ascendentes en su totalidad, estas multas, á doce mil quinientos dollars. El castigo máximun fijado para un *misdemeanor* de la naturaleza del que se abusó, era un año de prisión y una multa de doscientos cincuenta dollars. Después que el promovente hubo sufrido un año de prisión y pagado una multa de doscientos cincuenta dollars, presentó solicitud para que se expidiera auto de *habeas corpus*, á fin de que se investigara la legalidad de la prisión subsiguiente. Se resolvió que la sentencia impuesta por un sólo delito era correcta, y que las demás sentencias las dictó el tribunal excediendo su jurisdicción, y era absolutamente nula y no meramente errónea; el prisionero, después de la ejecución de una sentencia, tenía derecho á ser excarcelado por medio de *habeas corpus*. No había duda que en este caso la corte tenía jurisdicción sobre la persona del acusado y sobre cualquiera de los delitos determinados de que se le acusó.

En esa época regía en el Estado de New York el Derecho común en lo que hacía referencia á las acusaciones, y la corte declara que no había autoridad en dicho Estado para permitir la acumulación de varios cargos criminales en una sola, á pesar de ser distinta la práctica en Inglaterra y algunos de los otros Estados Unidos.

La Corte expresa que no hay inconveniente en exponer el mismo delito en tantos modos diferentes como se estime procedentes. Cita también el Tribunal el caso de *Crepps* v. *Durden,* 5 Cowp. 640. Ese fué un pleito de daños y perjuicios

con motivo de una declaración de culpabilidad hecha por Durden, Juez de Paz, contra Crepps por "ejercer su oficio habitual en domingo," y habiéndose probado que hubo varias ventas en un domingo determinado, Durden impuso á Crepps varios castigos. La demandá fué declarada con lugar aunque no se anularon las sentencias. La jurisdicción del magistrado para declarar la culpabilidad é imponer un castigo por un delito no fué discutida, pero el Tribunal Inglés resolvió que no tenía absolutamente ninguna jurisdicción para dictar las tres últimas sentencias, por la razón de que los actos cometidos en un mismo día no podían dar lugar más que á un solo delito y á un sólo castigo, y se resolvió que la convicción era nula por razón de un exceso de jurisdicción.

En el caso de *Ex parte Giambonini*, 117 Cal., 573, se dice:

"El peticionario fué declarado culpable en el tribunal de policía de la ciudad Stockton, del delito de vender bebidas alcohólicas á un niño menor de diez y ocho años. Fué condenado á pagar una multa de cien dollars y en defecto de pago, á prisión por cien días en la cárcel de la ciudad. C. P. Rendon, que actuó como juez de la corte de policía, fué siempre juez de paz de la ciudad de Stockton.

"El peticionario alegó que la sentencia dictada contra él era nula, porque el tribunal de policía de la ciudad de Stockton no tenía existencia legal."

Se admitía este hecho, pero se sostenía que C. P. Rendon, que actuó como juez del tribunal de policía, fué siempre juez de paz, y que, por lo tanto, tenía jurisdicción sobre la persona y sobre el delito cometido por el acusado. El Tribunal se expresa así:

"Un tribunal es un lugar en donde se administra justicia legalmente, si faltare el primer requisito esencial de un tribunal constituído legalmente, el acusado no ha sido juzgado con arreglo á las leyes del territorio.

"Por la misma razón no puede decirse que la sentencia puede ser considerada válida, porque el funcionario judicial tenía jurisdicción sobre el delito y sobre la persona como juez de paz. Un juez *de jure* de un tribunal legalmente constituído puede ejercer su jurisdicción

solamente en la forma que prescribe la ley. Según ha dicho el Tribunal Supremo de los Estados Unidos en el caso de *Windsor* v. *Mc-Veigh*, 93 U. S., 282, 'aunque el tribunal posea jurisdicción de una causa, de la materia, y de las partes, está, sin embargo, limitada en su sistema de procedimiento y en la extensión y naturaleza de su sentencia. Debe actuar judicialmente en todo sentido y no puede entonces extralimitar las facultades que la ley le concede.' El Juez de Paz pudo haber juzgado al acusado solamente en su juzgado de paz, y ninguna validez pueden llevar consigo las sentencias que él dictare en cualquier otro *forum*. De la misma manera pudo haberle juzgado por medio de un consejo de guerra como haber dictado sentencia en un tribunal de polícia constituído ilegalmente. Es requisito esencial para la validez de una sentencia que la corte que la dicte tenga jurisdicción. (*Anthony* v. *Kasey*, 83 Va., 338; 5 Am. St. Rep., 277.) La corte que dictó esta sentencia siendo un tribunal anticonstitucional, no tenía absolutamente ninguna jurisdicción.

"El caso de *Ex parte Reilly*, 85 Cal., 632, no pasa desapercibido. Las opiniones aquí expresadas puede ser que se aparten de aquéllas que se encuentran en los casos anteriores, pero creemos que la interpretación más sana de la ley es la que aquí expresamos. Procede que el peticionario sea excarcelado, y así se ordena."

Concediendo que hay semejanza entre los principios aplicables á las sentencias dictadas en casos civiles y á las dictadas en casos criminales, es bueno reconocer que en las cortes de casi todos los Estados una sentencia que no responda á las cuestiones debatidas se considera nula, y el Tribunal Supremo de los Estados Unidos, en el caso de *Reynolds* v. *Stockton*, 140 U. S., 270, dice:

"Pero sin acumular autoridades la proposición que sugiere aquéllas á que se ha hecho referencia, y la que nosotros sostenemos, es, que para dar á una sentencia, aunque sea dictada por un tribunal de jurisdicción general, el mérito y efecto de una sentencia con respecto á las partes, debe, además de las limitaciones expresadas anteriormente, estar en harmonía con las cuestiones planteadas por las alegaciones."

Además del caso de Hobart S. Bird, á que nos ha referido el Fiscal de este Tribunal, cita también el caso de *Ex parte*

*Shaw* y el de *In Re Lehinkul,* y algunos otros casos del Tribunal Supremo de los Estados Unidos. En cuanto nos ha sido posible consultar estas referencias, hemos visto que todos estos casos formulan el principio general de que meros errores ó irregularidades de derecho no pueden ser objeto de revisión por medio de un procedimiento de *habeas corpus,* proposición que hemos discutido anteriormente.

*In Re Eckart,* 166 U. S., 481 es un caso que hace referencia á una solicitud para que se dicte un auto de *habeas corpus,* y en dicho caso resolvió el tribunal que cuando una corte de Estado ha adquirido jurisdicción, por virtud de una acusación de asesinato y las leyes del Estado establecen una división de ese delito en tres grados y disponen que corresponde á las facultades del Jurado determinar bajo qué grado se encuentra comprendido el delito, el hecho de condenar al prisionero por el delito de asesinato en primer grado sin que el Jurado hubiere especificado de qué delito era él culpable, aunque es erróneo, no constituye un defecto de carácter jurisdiccional, que pueda ser remediado en un procedimiento de *habeas corpus,* porque los términos del veredicto eran suficientes para autorizar la imposición del castigo por el más alto grado del delito imputado.

Dice además el tribunal:

"El caso que aparece del récord no está comprendido dentro de ninguna de las excepciones establecidas á la regla general, de que cuando una corte tiene jurisdicción, de acuerdo con la ley, sobre el delito imputado y sobre la parte á quien se acusa, sus sentencias no son nulas de tal manera que puedan ser impugnadas por un procedimiento colateral ó indirecto. Se cita el caso de *Estados Unidos* v. *Pridgeon,* 153 U. S., 48, que á su vez cita los casos principales de *Ex Parte Lange y del Pueblo* v. *Liscomb* que expresan la regla general y sus excepciones."

*In Re Snow,* 120 U. S. 286, es también un caso en que se discutieron las reglas y sus excepciones y el caso de *Crepps* v. *Durden,* fué también considerado; véase, además, el caso de *Ex parte Reed,* 100 U. S., 13.

¿En qué difiere el caso sometido á nuestra consideración de aquellos en que el tribunal carecía de jurisdicción por no existir una segunda acusación, que fué el punto de discusión en los casos de *habeas corpus* de *Ex parte Bain* y *Ex parte Wilson?*

Con arreglo al artículo 35, los partícipes en los crímenes se clasifican en principales ó autores y cómplices, de modo que, de acuerdo con nuestro Código Penal, la única persona que se conoce con el nombre de cómplice es la que en la ley común se distingue con el de cómplice después del hecho. Cualquier persona que se le hubiere calificado como cómplice antes del hecho es ahora conocido en la ley común como principal ó autor. La sentencia en el presente caso demuestra que el prisionero fué declarado culpable como cómplice. El uso de la palabra "cómplice" en la sentencia no puede hacer referencia á otra persona que á la que especifican los artículos 35 y 37. El castigo que ha de imponerse á un cómplice está determinado en el artículo 18 del Código Penal, y en este caso se impuso al prisionero el máximun de la pena.

Según el artículo 36 del Código Penal, todas las personas relacionadas en la comisión de un crimen, ya cometan el mismo de una manera directa ó ayuden ó inciten la comisión de dicho crimen, son culpables como principales.

La sección 37 dice: "Todas las personas que después de tener conocimiento perfecto de que un delito grave (*felony*) se ha perpetrado, traten de ocultarlo de las propias autoridades, ó alberguen ó protejan á la persona acusada ó declarada culpable de dicho delito, son cómplices." Como hemos visto, las autoridades de los varios Estados se pronuncian en el sentido de que uno que ha sido acusado como principal no puede ser declarado como cómplice. El Código de Enjuiciamiento Criminal dispone que toda persona debe ser juzgada, por virtud de una acusación presentada por el Fiscal (véase la sección 3 y 6 *et seq.*) Aunque en Puerto Rico no se exige la acusación del Gran Jurado, sin embargo, una persona no puede ser acusada de un delito y convicta de otro. El mero

hecho de que el delito que supone la complicidad esté intima-
mente ligado al delito de que puede ser castigado el autor prin-
cipal, no cambia el hecho de que los dos son delitos distintos.
Nuestro Código de Enjuiciamiento Criminal contiene amplias
disposiciones para principiar de nuevo un proceso en los casos
en que la prueba sea insuficiente para justificar la prosecu-
ción de algunos ya empezados.  (Véase la sección 308 del Códi-
go de Enjuiciamiento Criminal etc.).

Si la Corte de Distrito de Humacao obtuvo jurisdicción
sobre la persona del prisionero en este caso particular, debe
haber sido, por virtud de la acusación presentada contra él
como autor principal.  Por virtud de esa acusación, tenía au-
toridad para juzgarle por el delito de asesinato y para decla-
rarle convicto de un delito menor de homicidio, pero, según las
autoridades de las cortes de los Estados Unidos, así como
por nuestra propia resolución dictada en el caso de Antonio
Paz y Santos, la complicidad es un delito distinto.

Aunque no tenemos requisitos con respecto á que las acu-
saciones deban ser formuladas por el Gran Jurado, sin em-
bargo, las disposiciones semejantes que nuestros estatutos
contienen para protección de la persona del prisionero, exigen
que debe procederse contra él, por virtud de una acusación ju-
rada por el Fiscal.  El simple arresto del mismo no es sufi-
ciente para autorizar una declaración de culpabilidad contra
él por cualquier delito.  Para que el tribunal adquiera ju-
risdicción es necesario que se le presente una acusación.  Si
esa acusación es limitada, la corte no tiene jurisdicción para
salirse fuera de sus límites.

En el caso de *El Pueblo* v. *Granice*, que se encuentra en el
tomo 50 Cal., 448, la corte dice:

"Durante el juicio de esta causa, el acusado ofreció probar que
en la acusación se habían insertado ciertas palabras, y que otras pala-
bras determinadas de la acusación se habían cambiado después de
haber sido presentada la misma y de formar parte del récord de la
corte.  El fiscal objetó á la admisión de semejante prueba por el fun-
damento de que el abogado del acusado había sido informado por

uno de los fiscales, antes de que el acusado contestara la acusación, "que la acusación había sido alterada después de haber sido formulada por el Gran Jurado"; y "que había muchos testigos para probar que tal alteración se había cometido," El tribunal se negó á permitir al acusado que presentara la prueba. Es deber de cualquiera de las partes llamar la atención del tribunal con respecto á cualquiera alteración que se haga en el récord de un procedimiento que esté pendiente, sin demora alguna y en la primera oportunidad en que pueda hacerse, después que haya tenido conocimiento de tal alteración. En este caso, tanto el fiscal como el acusado, tenían ese deber. Aunque el acusado no promovió este asunto prontamente, no por eso queda impedido de probar que en la acusación se han hecho alteraciones. Antes de que se cometieran las alteraciones que se alegan, la acusación imputaba al acusado solamente el delito de homicidio, pero después de alterada, le imputa el delito de asesinato. Con arreglo á esa acusación, la corte no tenía jurisdicción para juzgarle por ningún otro delito, sino el que se expresaba en la acusación cuando fué presentada por el Gran Jurado. El consentimiento por parte del acusado, ya se dé directamente ó se deduzca de sus hechos ú omisiones, no puede conferir jurisdicción al tribunal para juzgar al acusado por ningún otro delito distinto de aquel que se le imputa en la acusación, tal y como ha sido presentada y devuelta por el Gran Jurado.

"Se revoca la sentencia y la orden y se devuelve la causa para la celebración de un nuevo juicio."

En el caso de Granice, así como en el de *Ex parte Bain* del Tribunal Supremo de los Estados Unidos, se trató de enmendar la acusación, pero el Tribunal resolvió que era necesario otra acusación y que el hecho de haber dejado de presentarla, privaba á la corte de jurisdicción. En el caso de José de Thomas no se trató nunca de acusarle como cómplice.

En el Estado de Nevada, cuyos estatutos parecen seguir los de California, tienen una disposición semejante á la sección 201 de nuestro Código Penal, por la que todo asesinato cometido al perpetrarse algún incendio, rapto ó escalamiento, es de primer grado.

En el caso de *Ex parte Dela,* 83 Am. St., Rep. 603, que es un caso de *habeas corpus,* el peticionario había sido acusado

de asesinato en primer grado y convicto de violación. La Corte dice en la página 609:

"Se admite que la corte tenía jurisdicción sobre la persona del peticionario y jurisdicción sobre la materia, ó sea el delito de asesinato, de que fué acusado. Se admite también que la corte tenía jurisdicción para juzgar y castigar á una persona acusada de violación. Pero ¿podemos sostener, en virtud de la prueba que aparece del récord, que la corte tenía jurisdicción para dictar la sentencia de prisión en este caso determinado?

"No es suficiente alegar que como la corte tenía jurisdicción sobre la persona y jurisdicción para juzgar, declarar convicto y castigar ciertos delitos, necesariamente tiene jurisdicción sobre la materia en un caso determinado.

"El ejercicio de la jurisdicción en este caso, y en todos los casos de *felony,* depende de ciertas condiciones y requisitos, la falta de los cuales hace que la acción del tribunal sea, no meramente irregular, errónea y sujeta á nulidad, sino absolutamente nula. En la sección 8, artículo 1 de la Constitución, se prescribe, en términos prohibitorios, entre otras cosas, que ninguna persona será juzgada por un delito capital ó infamante (á excepción de ciertos casos especificados, ninguno de los cuales es el que estamos considerando,) sino por virtud de la presentación ó acusación del Gran Jurado, y que ninguna persona será privada de su vida, libertad ó hacienda sin que mediare debido procedimiento legal. ¿Podría siquiera pretenderse que el tribunal, á pesar de estos términos imperativos y prohibitivos de la constitución, podría dictar una sentencia de prisión que fuera válida por un delito del cual tiene jurisdicción, sin que mediara la presentación ó acusación que imputara la comisión del delito determinado? ¿No sería la acción de la corte, en tal procedimiento, completamente nula, á causa de un exceso de su jurisdicción, y porque privó á la parte de su libertad, sin que mediare debido procedimiento legal?

"La cuestión que se discute no es una de irregularidad, que surge de reglas de procedimiento, sino que es una de derecho sustantivo, basada en términos expresos de garantía constitucional. Se alega que del récord aparece que el prisionero fué acusado, juzgado, convicto y condenado por el delito de asesinato. Tomando en consideración hechos de carácter presuntivo, esta alegación es probablemente correcta; pero los hechos probados que aparecen en el récord contradicen é impugnan estas presunciones, y muestran concluyentemente que el peticionario fué convicto del delito de violación, delito por el

cual, ni fué acusado, ni juzgado y del cual no pudo haber sido convicto, bajo el cargo que se le hacía en la acusación."

En el caso que estamos considerando, el Tribunal probablemente fué inducido á error, por virtud de la íntima relación que existe entre el delito acusado, y aquél del cual fué en definitiva, declarado culpable el prisionero. Un caso semejante podría suponerse cuando acusada una persona de abuso de confianza fuera declarada culpable de robo, sino hubiera una ley que autorizara tal declaración de culpabilidad.

A la Legislatura corresponde determinar si lo estimare procedente, si una persona acusada de asesinato pueder ser convicta como cómplice, pero en tanto en cuanto la Legislatura no lo haya hecho, las cortes tienen que sujetarse á los delitos incluídos dentro de aquél imputado en la acusación. En el caso de *In Re Eckart,* 166 U. S., 481, arriba citado, se expresan las facultades de un tribunal en estos casos. En el caso que estamos considerando no se trató de enmendar la acusación, y lo único que el tribunal tuvo ante sí fué la acusación que no le daba jurisdicción para juzgar por el delito que supone la complicidad. Aunque parece probable que el prisionero acusado de asesinato quisiera que se le declarara culpable como cómplice, sin embargo, como hemos dicho en el caso de *Ex parte Granice,* su mero consentimiento no podría conferir jurisdicción.

La Corte, como hemos dicho, incurrió en el error de estimar que este delito estaba incluído en la acusación. El prisionero pudo haber incurrido en el mismo error. En la apelación ante este Tribunal expresamente manifestó que él no tenía objeción alguna que hacer contra la sentencia, excepto en aquella parte en que la sentencia era excesiva. No habiendo tenido jurisdicción la corte inferior, el hecho de que este tribunal confirmara su sentencia, no cambia la naturaleza de la sentencia, bajo la cual fué en definitiva condenado. La sentencia era nula, por consiguiente, José de Thomas nunca ha sido legalmente convicto de delito alguno y no podría

alegar nunca que había estado expuesto dos veces por el mis-
mo delito, que es lo que en algunos casos se ha considerado
como la piedra de toque para probar la validez de una senten-
cia condenatoria.

*Resuelto de conformidad.*

· Jueces concurrentes: Sres. Presidente Quiñones y Aso-
ciados, Hernández y Figueras.

Juez disidente: Sr. MacLeary.

### VOTO PARTICULAR DEL JUEZ SR. MACLEARY.

No estoy conforme con la revocación de la sentencia en el
presente caso, por las razones siguientes:

En primer lugar, la resolución de la corte de distrito no
fué dictada en debida forma al no devolver al prisionero al
presidio, ó excarcelarle, según lo preceptúa el artículo 485 del
Código de Enjuiciamiento Criminal. En casos como éste en
que ya ha sido expedido el auto de *habeas corpus* y el prisio-
nero traído ante la corte ó juez, la sentencia ó resolución que
se dicte debe ser una, por la cual se remita el preso á la cus-
todia en que se hallaba, ó admitiéndole fianza ó excarcelándole
completamente. Como se verá de los autos de este caso, la
corte inferior no hizo ni una cosa ni la otra, sino que desestimó
la solicitud por la cual se interesaba el auto de *habeas corpus*.
Por esta razón, creo que debe revocarse la sentencia, devol-
viéndose el caso para que se proceda á dictar una resolución
como la que debió haber sido dictada por la corte inferior,
ó debe dictarse una resolución por este tribunal remitiendo
las transcripciones á la corte inferior para que se corrija la
sentencia.

Pero, en segundo lugar, aún cuando la orden adecuada hu-
biera sido dictada por la corte inferior y la apelación debida-
mente interpuesta ante este tribunal, el prisionero no debe
ser excarcelado, porque la sentencia condenatoria dictada
contra él por la Corte de Distrito de Humacao, no era nula
enteramente, sino simplemente errónea, y por esa razón no

puede ser anulada en *habeas corpus*. Este es un principio legal bien conocido y de aplicación en tales casos, el que ha sido ampliamente discutido y aplicado al caso de *Hobart S. Bird ex parte,* No. 29, resuelto por este tribunal en 15 de marzo 1904. Después de examinar las autoridades que establecen una distinción entre lo que son sentencias nulas y aquellas que simplemente pueden anularse, la corte, en la opinión referida en el caso de Bird, se expresa en los términos siguientes:

"Del examen de estas secciones resulta claramente que la única sección aplicable á este caso, es el primer párrafo de la sección 483, por la que se declara que "cuando se haya excedido la jurisdicción de tal tribunal ó funcionario" se podrá poner en libertad al acusado. No puede haber duda después de una revista minuciosa de todos los autos y de las razones alegadas por el peticionario para que se le ponga en libertad, que en este caso el tribunal de distrito tenía jurisdicción sobre el delito denunciado, sobre la persona del acusado y sobre el asunto de que se trataba en esta causa, que no se había excedido la jurisdicción en lo más mínimo, y que el Tribunal Supremo tenía jurisdicción de apelación para decidir dicho asunto al interponerse el recurso de apelación.

"No se ha demostrado nada en la solicitud ni en el alegato que pueda atacar, con éxito, esta jurisdicción ó la forma en que se ha ejercido, y tanto por esta razón, cuanto por otras expresadas en la presente, la solicitud no puede prevalecer.

"La mayoría de los puntos alegados en esta solicitud atacan más bien el método de procedimiento que no la jurisdicción de los tribunales que dictaron la sentencia, por la cual el acusado fué declarado culpable, y de esta manera tratan de apartar el objeto del auto de *habeas corpus* de su primitivo propósito de libertar al peticionario de una sujeción ó encarcelación ilegal, de modo que haga las veces de un recurso de error ó de apelación. Es un principio elemental que esto no es posible y en apoyo de esto no creo que sea necesario citar autoridades; sin embargo, podrá hacerse referencia á algunas: *Storti v. Massachusetts* 183 U. S., 141; *Minnesota* v. *Brundage,* 180 U. S., 499; *Markuson* v. *Boucher* 175 U. S., 184; *Tinsley* v. *Anderson* 171 U. S., 101; *Baker* v. *Grice* 169 U. S., 284.

"El Juez Taft en la causa de McKnight, *Federal Reporter,* página 801, dijo muy bien que, "Antes de que un tribunal pueda intervenir

mediante *habeas corpus* en la sentencia dictada por otro Tribunal, deberá poder decir que dicha sentencia es nula y sin ningún valor.'' También se ha dicho por el Tribunal Supremo de los Estados Unidos que ''cuando la objeción que se haga contra una sentencia solamente se refiere á la regularidad de los procedimientos que dieron por resultado el juicio, y no á la jurisdicción del tribunal de hacer ejecutar la sentencia, tal irregularidad no hace nula la sentencia.'' *Harding ex parte* 120 U. S., 782. No hay nada en estos autos que invalide la sentencia y apoye la solicitud.''

En mi opinión, aun cuando la sentencia dictada contra José de Thomas por la Corte de Distrito de Humacao haya sido errónea, ó cuando menos fuera excesiva, (por cuya razón no estuve de acuerdo en la confirmación de la misma, no firmando la sentencia hasta entonces dictada por este tribunal en aquel caso), sin embargo, creo que dicha sentencia no es completamente nula, por cuya razón soy de opinión de que la misma no puede ser impugnada en procedimientos de *habeas corpus*.

Siendo de este parecer, respetuosamente disiento de la sentencia dictada y de la opinión aprobada por mis compañeros.