EL PUEBLO DE PUERTO RICO, demandante y peticionario, *v.* ANA M. MILLÁN ÁLVAREZ y ROBERTO REXACH BENÍTEZ, demandados y recurridos.

*Número:* CE-92-522     *Resuelto:* 8 de abril de 1993

·*Anabelle Rodríguez, Procuradora General*, abogada del peticionario; *Francisco Valcárcel y Héctor Aníbal Castro Pérez*, abogados de los recurridos.

## SENTENCIA

Acude ante nos el Procurador General y solicita que revoquemos el dictamen, mediante el cual el foro de instancia se declaró sin jurisdicción para entender en la vista preliminar en alzada en el caso de marras, porque el expediente no contenía las denuncias correspondientes a los delitos ante su consideración.

Examinada la sentencia aludida, así como los planteamientos de las partes, y a la luz del derecho aplicable, se confirma la decisión.

Considerando que el dictamen recurrido no adjudicó en los méritos la cuestión de si existía o no causa probable para acusar, el Ministerio Público no está impedido de presentar una nueva solicitud de vista preliminar en alzada que incluya las denuncias correspondientes.

Así lo pronunció y manda el Tribunal y certifica el Señor Secretario General. El Juez Asociado Señor Hernández Denton emitió una opinión concurrente y de conformidad, a la cual se unieron el Juez Presidente Señor Andréu García y el Juez Asociado Señor Alonso Alonso. Los Jueces Asociados Señores Negrón García y Rebollo López emitieron sendas opiniones disidentes. El Juez Asociado Señor Fuster Berlingeri no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión concurrente y de conformidad emitida por el Juez Asociado Señor Hernandez Denton, a la cual se unen el Juez Presidente Señor Andréu García y el Juez Asociado Señor Alonso Alonso.

Recurre ante nos el Procurador General, por una resolución del Tribunal Superior mediante la cual declaró sin lugar una solicitud de vista preliminar en alzada en torno a varios cargos de apropiación ilegal agravada, Art. 166(a) del Código Penal, 33 L.P.R.A. sec. 4272, que se le imputan al Senador del Partido Nuevo Progresista, Hon. Roberto Rexach Benítez y a la Srta. Ana M. Millán Álvarez. Fundamentó esta decisión en que, al no haberse acompañado las denuncias correspondientes con dicha petición, el tribu-

nal carecía de jurisdicción para entender en una vista preliminar en alzada bajo la Regla 24(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Por entender que tiene razón el foro de instancia, estamos conformes con la sentencia que hoy emite este Tribunal.

I

El 18 de abril de 1991 se presentaron, contra los aquí recurridos, ciento veinte (120) cargos criminales por concepto de apropiación ilegal agravada y posesión y traspaso de documentos falsificados, Arts. 166(a) y 272 del Código Penal de Puerto Rico, 33 L.P.R.A. secs. 4272 y 4592. Después de ciertos incidentes procesales, el Tribunal Superior ordenó la desestimación de todos los cargos imputados por entender que carecía de jurisdicción sobre ellos. En *Pueblo v. Rexach Benítez*, 130 D.P.R. 273 (1992), revocamos esta decisión y ordenamos la continuación del procedimiento de vista preliminar en cuanto a los cargos en que se determinó causa probable para el arresto, y sobre los cuales el Departamento de Justicia tenía jurisdicción para investigar. Conforme con ese mandato, se celebró una vista preliminar en el Tribunal de Distrito (Hon. Awilda Irizarry Pardo, Juez).

Esta vista fue para determinar causa probable para el arresto en cuanto a quince (15) cargos bajo la Regla 6(c), 34 L.P.R.A. Ap. II, y para determinar causa probable para acusar en vista preliminar bajo la Regla 23 (34 L.P.R.A. Ap. II). Allí se dictaminó ausencia de causa probable para arrestar por los quince (15) cargos sometidos en alzada bajo la Regla 6(c), *supra*. Se concluyó, además, que no había causa probable para acusar por los seis (6) delitos de apropiación ilegal agravada.

Oportunamente, el Ministerio Público presentó ante el Tribunal Superior una solicitud de vista preliminar en alzada. A dicha solicitud, anejó copia de las resoluciones

dictadas en la vista preliminar.[1] No incluyó copia de las denuncias originales.

El 14 de julio de 1992 las partes se reunieron en el despacho del juez. Como no había hechos esenciales en controversia, sino sólo planteamientos de derecho, convinieron someter el caso a base de la misma prueba vertida ante el Tribunal de Distrito. A esos fines, las partes presentaron el expediente evidenciario al magistrado. Todas las estipulaciones pasaron a formar parte del récord en corte abierta. Allí identificaron los documentos que serían estipulados y que habrían de ser presentados ante la consideración del tribunal. Entre estos, estipularon que se tomara como cierta una declaración jurada del Senador Rexach Benítez. Los recurridos hicieron un planteamiento de procesamiento discriminatorio y cuestionaron si en efecto los hechos estipulados configuraban el delito de apropiación ilegal agravada. Por su parte, el Ministerio Público sometió un memorando de derecho para refutar los argumentos de los recurridos.

El caso quedó así sometido para la vista preliminar en alzada, que fue señalada para el 29 de julio de 1992. Según se desprende de la minuta, ese día sucedió lo siguiente:

> El Tribunal hace constar queluego [sic] de considerar lo que le fuera sometido, *su determinación es la de declarar Sin Lugar la Solicitud de Vista Preliminar en Alzada. Que no se trata de si existe o no causa probable contra los imputados.* Al estar considerando los alegatos de las partes se dió cuenta de que el Ministerio Público no sometió a la consideración del Tribunal las denuncias sobre los delitos que pretendía imputar. (Énfasis suplido.)

Es decir, el expediente evidenciario a base del cual el magistrado de instancia aprobó las estipulaciones contenía quince (15) denuncias. Todas correspondían a los cargos por los cuales se determinó ausencia de causa probable

---

[1] Las resoluciones hacen referencia a los cargos imputados y al hecho de que se determinó ausencia de causa probable para acusar.

para *arrestar* en alzada y que, en consecuencia, no estaban ante su consideración en vista preliminar en alzada. Las denuncias correspondientes a los seis (6) cargos de apropiación ilegal, que sí estaban bajo su consideración, no obraban en ese expediente. Al percatarse de esto, el magistrado declaró sin lugar la solicitud de vista preliminar en alzada por el fundamento de que, faltando las denuncias, el tribunal carecía de jurisdicción para determinar causa probable para acusar en vista preliminar en alzada bajo la Regla 24(c), supra. Nótese que el propio juez de instancia claramente hizo constar para récord que su determinación no era de ausencia de causa probable en los méritos. En efecto, la vista en alzada nunca se llegó a celebrar porque, el 19 de agosto, el foro de instancia denegó la moción de reconsideración presentada por el Ministerio Público, en la cual tampoco anejó las denuncias.

Como la Regla 23, *supra*, nada dispone en cuanto a la documentación que debe acompañar la solicitud de vista preliminar en alzada, el magistrado acudió, por analogía, a los preceptos de la Regla 6(a), 34 L.P.R.A. Ap. II. Este precepto dispone que, fuera de los casos en los cuales el magistrado examina bajo juramento a un testigo con conocimiento personal de los hechos, la determinación de causa probable para el arresto se hará a base de una denuncia jurada o a base de las declaraciones juradas que acompañen la denuncia. No habiendo en este caso examinado ningún testigo bajo juramento con conocimiento personal de los hechos, concluyó el juez de instancia que era requisito jurisdiccional que el Ministerio Fiscal presentara la denuncia jurada o declaraciones juradas acompañadas de la denuncia.

En su recurso ante nos, el Ministerio Público sostiene que erró el foro de instancia al determinar que incluir las denuncias con la solicitud de vista preliminar en alzada es un requisito jurisdiccional. Aduce que las denuncias en cuestión estaban en el expediente ante el Tribunal de Dis-

trito, por lo que, tratándose de un tribunal de primera instancia unificado, es como si estuvieran también ante el Tribunal Superior. Alega que no existe disposición estatutaria que convierta el anejar la denuncia en un requisito jurisdiccional. Sostiene, además, que se trata de una vista preliminar en alzada en torno a los últimos cargos que quedan pendientes, por lo que el Fiscal ya no tendría otro recurso disponible para someter a los imputados a juicio. En vista de lo anterior, señala que no debemos considerar el anejar la denuncia a la solicitud de vista preliminar en alzada como un requisito jurisdiccional. En todo caso, sería uno de estricto cumplimiento.

Por su parte, los recurridos exponen que la denuncia es la primera alegación del Estado en un procedimiento criminal. Como tal, tiene la función de cumplir con la exigencia del debido procedimiento de ley de notificar a una persona de la conducta que se le imputa y el delito que ésta configura. Tratándose la vista preliminar en alzada de una separada y distinta de la vista preliminar original, aduce que el Estado tiene la obligación de someter las denuncias nuevamente para notificar a la persona de los cargos que se le imputan. De otro modo, el tribunal carece de jurisdicción para hacer una determinación de causa probable para acusar.

Expuesta sucintamente la naturaleza de la controversia ante nos, examinemos el derecho aplicable.

## II

La Regla 5 (34 L.P.R.A. Ap. II), define la denuncia como un escrito firmado y jurado que imputa la comisión de un delito a una o varias personas. La denuncia es uno de los instrumentos procesales que cumplen la función de proveer una base escrita para encausar criminalmente a una persona. Standard 13-1.1 (2 *The ABA Standards for Criminal Justice* Sec. 13-1.1 (2 ed.1982)). En Puerto Rico, la acu-

sación cumple igual función en los casos criminales comenzados ante el Tribunal Superior. Regla 34(a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.(²)

Es principio firmemente arraigado en la jurisprudencia norteamericana que la existencia de algún tipo de acusación formal es un requisito jurisdiccional e irrenunciable para poder encausar criminalmente a una persona. Véanse: *Albrecht v. United States*, 273 U.S. 1, 8 (1927); *Hepner v. United States*, 213 U.S. 103, 108 (1909); *Post v. United States*, 161 U.S. 583, 585 (1896); 2 *Wharton's Criminal Procedure*, págs. 9 y 41 (13ra ed. 1990); Anotación, *Right to Waive Indictment, Information or Other Formal Accusation*, 56 A.L.R.2d 837, 838 (1957). El objetivo de este principio es limitar las ocasiones en que un tribunal tiene jurisdicción para procesar a un imputado, hacia aquellas en que se ha cumplido con todos los requisitos de ley. *Post v. United States*, supra, pág. 585.

También, en Puerto Rico hemos resuelto que los tribunales asumen jurisdicción sobre los imputados en casos criminales en virtud de la acusación o denuncia presentada. No basta con el arresto. *Ex parte Thomas*, 12 D.P.R. 370, 385–386 (1907). En efecto, la jurisdicción se determina a base de los hechos relatados en el cuerpo de la denuncia. *Pueblo v. Gibson*, 51 D.P.R. 120, 124 (1937). A diferencia de los casos civiles, en los casos criminales la jurisdicción defectuosa no puede suplirse por anuencia de las partes. *Pueblo v. Miller*, 50 D.P.R. 846, 848 (1937); *El Pueblo v. Paz*, 12 D.P.R. 99, 104 (1907). La citada doctrina, sin embargo, no obsta para que, cuando la acusación formal ha sido debidamente presentada pero se ha extraviado, o ha sido destruida o mutilada, pueda suplirse su falta con una copia. *Wharton*, supra, pág. 42.

---

(²) El *indictment*, el *information* y el *complaint* desempeñan igual papel en el ordenamiento criminal de algunos de los estados de la Unión. Para una explicación de las diferentes modalidades de los instrumentos acusatorios, véanse: S. Singer, *Constitutional Criminal Procedure Handbook*, Nueva York, Wiley Law Pubs., 1986, págs. 12–13, o 2 *Wharton's Criminal Procedure* Sec. 206 *et. seq.* (13ra ed. 1990).

Gran parte de la normativa de la denuncia encuentra sus raíces en imperativos constitucionales. Tanto la Sexta Enmienda de la Constitución de Estados Unidos como la Sec. 7 del Art. II de nuestra Constitución, L.P.R.A., Tomo 1, expresamente disponen que en todo proceso criminal el acusado tendrá el derecho a estar informado de la naturaleza y causa de la acusación. *Russell v. United States*, 369 U.S. 749, 760–761 (1962); *Valentín v. Torres*, 80 D.P.R. 463, 479 (1958). Ese derecho surge también como un derecho de justicia fundamental al amparo del debido procedimiento de ley. *Groppi v. Leslie*, 404 U.S. 496, 502–503 (1972), citando a *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 313 (1950); *Santiago v. Jones*, 74 D.P.R. 617, 623 (1953); S. Singer, *Constitutional Criminal Procedure Handbook*, Nueva York, Wiley Law Pubs., 1986, pág. 35.

Entre las garantías procesales mínimas que deben estar presentes en un procedimiento criminal, se encuentra el derecho a una debida notificación. Al comienzo de todo procedimiento criminal, la denuncia cumple con este requisito constitucional de notificar al imputado de los cargos pendientes en su contra. Constituye así la primera alegación por parte del Estado en todo procedimiento criminal. Regla 34(b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Para que impute delito y cumpla con los requisitos de dar suficiente aviso al acusado a tenor con los imperativos constitucionales, la denuncia debe informar al acusado del delito que se le imputa, de modo que pueda preparar una defensa adecuada. *United States v. Miller*, 471 U.S. 130, 134–135 (1984); *Russell v. United States*, supra, pág. 763–765; *Pueblo v. González Olivencia*, 116 D.P.R. 614, 617 (1985); *Pueblo v. Meléndez Cartagena*, 106 D.P.R. 338, 341 (1977); *Rabell Martínez v. Tribunal Superior*, 102 D.P.R. 39 (1974); 1 *Wright, Federal Practice and Procedure* Sec. 125, pág. 364 (2da ed. 1982). Veáse, *e.g.*, *United States v. Hess*, 124 U.S. 483, 487 (1888). Aunque no tiene que clasificar el delito como grave o menos grave, ni especificar la totalidad de las

circunstancias, debe exponer los hechos esenciales constitutivos del delito en lenguaje sencillo, claro y conciso que pueda ser comprendido por una persona de inteligencia común. Regla 35(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II; *Pueblo v. Santiago Cedeño*, 106 D.P.R. 663, 666 (1978).

Además de la función de notificar los cargos al imputado, la denuncia cumple otras dos (2) funciones: la de evitar la doble exposición y la de facilitar la revisión judicial. Y. Kamisar, W. LaFave y J.H. Israel, *Modern Criminal Procedure*, 5ta ed., St. Paul, Ed. West Pub. Co., 1980, pág. 1135. Por lo tanto, debe describir los cargos con suficiente precisión como para que el imputado pueda oponer la denuncia en cuestión a un segundo procesamiento por la misma causa. *United States v. Miller*, supra, pág. 135; *Russell v. United States*, supra, pág. 764; *United States v. Debrow*, 346 U.S. 374, 376 (1953); *United States v. Hess*, supra, pág. 487. Este requisito pretende garantizar el derecho a no ser puesto en riesgo de ser procesado dos veces por un mismo delito. Emda. V, Const. EE. UU., L.P.R.A., Tomo 1; Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1. Finalmente, la denuncia debe informar al tribunal de los hechos imputados, de modo que pueda decidir si son suficientes en derecho para sostener una convicción. *Russell v. United States*, supra, pág. 768; *United States v. Hess*, supra, pág. 487; *United States v. Cruishank*, 92 U.S. 542 (1876); Kamisar, *op cit.*; *Wharton*, supra, pág. 10. Aunque esta última función no ha sido tan destacada por los tribunales como las dos (2) anteriores, el Tribunal Supremo federal reafirmó su vigencia como corolario esencial de las otras dos (2). *Russell v. United States*, supra.

En vista de la normativa antes expuesta, es forzoso concluir que, en nuestro ordenamiento, la denuncia es un requisito indispensable en todo procedimiento criminal ante nuestros tribunales. Desde el punto de vista del acusado, al amparo del debido proceso de ley, éste tiene un derecho

de rango constitucional a que se presente una denuncia en su contra antes de ser encausado y a que se le informe de su contenido. Ambos preceptos garantizan unas reglas de juego justas que el Estado debe observar con los individuos al restringir su libertad.

Cuando el interés involucrado es la libertad, el Estado no puede pretender someter a una persona a un procedimiento arbitrario y encausarlo por cualquier delito, o algún delito específico a base de cualquier situación de hechos que escoja a su antojo, mientras desfila su prueba ante el foro judicial. Por ello, el Estado tiene el deber de, antes de presentar su caso al escrutinio judicial, alegar unos hechos concretos a los cuales debe ceñirse luego cuando desfile su prueba. La denuncia, pues, protege a la persona contra procedimientos abusivos y arbitrarios por su ambigüedad y amplitud. Es un requisito de cumplimiento sencillo que no impone una carga excesiva al Estado, pero que a su vez reduce grandemente el riesgo a una determinación errónea que pueda culminar en una privación de la libertad. Véase *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

No obstante, el acusado puede renunciar a su derecho a ser notificado de los cargos en su contra. *Valentín v. Torres*, supra; *Flores v. Bravo*, 79 D.P.R. 505, 509 (1956). A lo que no puede renunciar es a que, previo a ser encausado, se haya presentado la correspondiente denuncia. Este requisito es de índole jurisdiccional y su omisión podría acarrear, en su día, la nulidad de la sentencia. *Post v. United States*, supra; *Pueblo v. Gibson*, supra; Regla 192.1(a)(b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Para satisfacerlo, basta con la presentación de la denuncia, aunque ésta se haya extraviado o haya sido hurtada, mutilada o destruida.

Aunque el procedimiento de vista preliminar y el de vista preliminar en alzada son anteriores al juicio propiamente, el requisito de que se haya presentado una denuncia se extiende a esa etapa. Ello responde a varias conside-

raciones que van más allá de la notificación al imputado de los cargos en su contra. Primero, tanto la vista original como la vista en alzada forman parte integral de la acción penal. *Pueblo v. Rodríguez Aponte*, 116 D.P.R. 653 (1985). Segundo, el magistrado debe tener ante sí la denuncia para conocer la versión de los hechos del Estado y analizarlos a la luz de la prueba presentada, y para determinar si configuran el delito imputado. *Russell v. United States*, supra. Tercero, la denuncia permitirá delimitar los delitos por los cuales se interrumpió el término prescriptivo. De haber una determinación negativa de causa probable en alzada, el Estado tampoco podrá presentar otro procedimiento por los mismos hechos imputados en la denuncia. *Pueblo v. Cruz Justiniano*, 116 D.P.R. 28, 31 (1984). Finalmente, nuestras Reglas de Procedimiento Criminal expresan que la determinación de causa probable se haga a base de una denuncia. Veamos.

El inciso (a) de la Regla 6 de Procedimiento Criminal, *supra*, dispone que un magistrado determinará causa probable para arrestar de una (1) de tres (3) formas: a base de la denuncia a base de las declaraciones juradas que se unan a las denuncias o a base del examen bajo juramento de un testigo con conocimiento personal de los hechos. Podemos concluir que la determinación de causa probable para arrestar bajo la Regla 23 (34 L.P.R.A. Ap. II) también debe hacerse a base de una denuncia, si hacemos un paralelo entre esa regla y la Regla 6, *supra*. Existe, entre estas reglas, una identidad de propósitos la cual es determinar causa probable para creer que se ha cometido un delito, y que el imputado lo cometió. Sin una determinación positiva en ambos casos, no podrá darse curso a la denuncia. Regla 6(a) y 6.1 de Procedimiento Criminal, 34 L.P.R.A. Ap. II; *Álvarez v. Tribunal Superior*, supra, pág. 238.

Podemos llegar a igual resultado a base de un análisis integrado de las Reglas de Procedimiento Criminal. Tanto la Regla 22(c), 34 L.P.R.A. Ap. II, como la Regla 6(a), *supra*,

disponen que el magistrado que expida una orden de arresto o citación, remitirá la denuncia a la sección y sala correspondiente del Tribunal de Primera Instancia para que se dé cumplimiento a los trámites posteriores. En el caso de que se determine causa probable para arrestar por un delito grave, el trámite posterior será la vista preliminar, en la cual se determinará si existe causa probable para acusar.[3] Regla 23(a) Procedimiento Criminal, 34 L.P.R.A. Ap. II. Por lo tanto, la denuncia ha de remitirse a la sala en donde se celebrará la vista preliminar. Nótese, no obstante, que es el magistrado quien determina causa probable para arrestar bajo la Regla 6(a), *supra*, o aquel ante quien comparece por primera vez el imputado bajo la Regla 22(c), 34 L.P.R.A. Ap. II, y no el Fiscal, quien remite la denuncia a la sala y sección correspondiente. Además, las reglas han impuesto ese deber al magistrado sólo cuando ha hecho una determinación positiva de causa probable.

Determinada la inexistencia de causa probable para acusar, el imputado quedará exonerado. *El Vocero de P.R. v. E.L.A.*, 131 D.P.R. 356 (1992); *Pueblo v. Félix Avilés*, 128 D.P.R. 468 (1991); *Pueblo v. Méndez Pérez*, 120 D.P.R. 137, 142–143 (1987). Similarmente, cuando la determinación haya sido de causa probable por un delito inferior, el imputado habrá sido exonerado en cuanto a aquellos delitos mayores contenidos en la denuncia original, de modo que habrá que someterse una nueva denuncia. El efecto neto de ambas determinaciones es que la presentación de la denuncia original habrá sido rechazada. No obstante, en ambos casos el fiscal podrá someter el asunto de nuevo, con la misma u otra prueba, ante un magistrado de categoría superior al Tribunal de Primera Instancia. Regla 24(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

---

[3] Una determinación positiva es requisito previo a la presentación de la correspondiente acusación. Regla 23(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

No existe disposición reglamentaria alguna referente a las formalidades que debe reunir una solicitud de vista preliminar en alzada. Tampoco la jurisprudencia ha llenado esa laguna. Sin embargo, puesto que el propósito de dicha vista será determinar si existe causa probable para acusar a base de la misma denuncia presentada en instancia, podemos concluir que el fiscal debe presentar la denuncia original de nuevo en alzada. Esto responde a que, siendo la denuncia un requisito sine qua non para la celebración de la vista en alzada, el fiscal debe colocar al tribunal en posición de conocerla. No podrá depender para ello de que la denuncia esté contenida en el expediente en la sala de instancia. Como el Ministerio Público sólo recurre en alzada en ocasiones en que la presentación de una denuncia ha sido rechazada, ya fuese porque se determinó ausencia de causa probable o porque se determinó causa probable por un delito inferior, le corresponde presentar la denuncia de nuevo ante el tribunal que entenderá en la vista en alzada.

No obstante lo anterior, el no incluir la denuncia con la solicitud de vista preliminar en alzada no es un defecto que derrote definitivamente el derecho de acudir a una vista en alzada en los méritos. Mientras que una vista preliminar en los méritos no puede celebrarse válidamente sin que se haya presentado una denuncia, el no inlcuir la denuncia con la solicitud meramente la convierte en una solicitud incompleta. En esos casos, lo que procede es conceder un término al Ministerio Público para que subsane el defecto mediante la presentación de una solicitud completa. Ello es cónsono con el mandato de la Regla 66 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Ésta reconoce que son subsanables los defectos en la presentación o tramitación del proceso o de la denuncia. Claro está, los defectos que puedan dar paso a que se desestime el proceso sólo son subsanables dentro de los términos prescriptivos de los delitos. Regla 66 de Procedimiento Criminal, *supra*; *Pueblo v.*

*Rexach Benítez*, supra. También debe respetarse el derecho a un juicio rápido.

## III

El fiscal, en este caso, no presentó la denuncia junto a su solicitud de vista en alzada. Tampoco la presentó junto a su moción de reconsideración. Al amparo de la normativa anteriormente expuesta, actuó correctamente el tribunal de instancia al rechazarla por estar incompleta. Esta decisión no equivale a una adjudicación en los méritos. Así correctamente lo hizo constar el tribunal de instancia. Por ende, concluido este proceso apelativo, y conforme con el mandato de la sentencia de esta Curia, corresponde al Ministerio Público, en el ejercicio de su discreción, decidir si prosigue con el encausamiento de los imputados mediante la presentación de una nueva solicitud de vista preliminar acompañada de las respectivas denuncias.[4]

## – O –

Opinión disidente del Juez Asociado Señor Negrón García.

Decía E.J. Couture en su magistral obra *Los Mandamientos de Abogado*, 9na ed., Buenos Aires, Ed. Depalma, 1982, págs. 46–47, que "[l]as verdades jurídicas como si fueran de arena, difícilmente caben todas en una mano; siempre hay algunos granos que, querámoslo o no, se escurren de entre nuestros dedos y van a parar a manos de nuestro adversario".

---

[4] La sentencia que hoy emitimos no es impedimento para que, en caso de que el Ministerio Público decida proseguir el encausamiento, el Senador Rexach Benítez y la señorita Millán Álvarez invoquen como defensa que medió discrimen por razón de ideas políticas en la investigación original de los hechos y el comienzo del encausamiento. Ver *Pueblo v. Rexach Benítez*, 130 D.P.R. 273 (1992), opinión concurrente y de conformidad.

# I

No podemos suscribir la "verdad jurídica" de la sentencia del Tribunal. Aunque no se exponen los fundamentos, evidentemente está apuntalada en una interpretación equivocada de los antecedentes y del trámite procesal evidenciario. Responde al mismo enfoque técnico restrictivo de circunvalación que prevaleció en el foro de instancia (Hon. José A. Torres Caraballo, Juez). El resultado es igual: *abstenerse de dictaminar si existe o no causa probable contra el Senador Roberto Rexach Benítez en seis (6) denuncias por alegada apropiación ilegal agravada. Cf. Pueblo v. González Rivera*, 132 D.P.R. 517 (1993). Dicho magistrado, *después de celebrar la vista en alzada, sua sponte* resolvió que no tenía "jurisdicción" al percatarse que el Ministerio Fiscal no había acompañado copias de esas denuncias con su solicitud original y la moción de reconsideración.

Ambos dictámenes pasan por alto y subestiman lo verdaderamente ocurrido. Los hechos esenciales no estaban en controversia. Ante el Juez Torres Caraballo, el Ministerio Fiscal y la defensa acordaron "someter el caso a base de *la misma prueba vertida* ante el Tribunal de Distrito". Además, le presentaron el expediente evidenciario con las *estipulaciones*, como parte del récord, que contenían declaraciones juradas, incluso una del Senador Rexach Benítez estipulada como "cierta". *Es ineludible concluir que la vista preliminar en alzada se celebró.*

Cualesquiera dudas quedan disipadas de una lectura de la moción de 23 de junio de 1992 del Ministerio Fiscal, en la cual categóricamente expresó que el "día 14 de junio de 1992, fecha en que estuvo señalada *esta Vista Preliminar quedó sometida la misma ante la consideración de este Honorable Tribunal, luego que las partes por estipulación sometieran la correspondiente evidencia y formularan sus respectivos alegatos*". (Énfasis suplido.) A.O., 50.

*¿Cómo puede la mayoría concluir que la vista en alzada nunca se llegó a celebrar?*

## II

En estas circunstancias específicas, no era necesario aplicar el principio analógico de hermenéutica y discutir la extensión de la Regla 6(a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, al trámite de vista preliminar en alzada. Aún bajo esa premisa, obviamente se ha malinterpretado su alcance y dinámica: sólo es necesario acompañar una denuncia escrita cuando la jura un policía, funcionario o empleado público *por información y creencia*; en esa etapa puede prescindirse si el testigo o testigos tienen conocimiento personal de los hechos y si las partes estipulan esa prueba. Tal es la situación en el caso de autos.

Una estipulación de esta naturaleza, consistente de las declaraciones juradas (incluso la veracidad de una) y de otros documentos, no es asunto que judicialmente debamos tomar o despachar a la ligera. *Su adopción por las partes lógicamente presupone un conocimiento cabal del contenido de las denuncias objeto de la vista preliminar.* De lo contrario, ¿para qué se hacen?

Aquí las estipulaciones convenidas reflejan que el Ministerio Fiscal y la defensa sabían muy bien lo que hacían. *Ni siquiera Rexach Benítez y sus abogados levantaron la cuestión de las denuncias o pidieron al Ministerio Fiscal o al Juez Torres Caraballo que les suplieran copias.*

Es incomprensible la sentencia del tribunal. Lo acordado precisamente versó sobre los testimonios que se prestaron ante la Juez del Tribunal de Distrito (Hon. Awilda Irizarry Pardo), reducidos a declaraciones juradas. *Mediante esa conducta procesal y su equivalencia conceptual evidenciaria*, se superó la omisión de las denuncias. Para todos efectos, se examinaron bajo juramento varios testigos con conocimiento personal de los hechos.

Nuevamente, ¿cómo puede la mayoría ignorar esta realidad no contradicha y transformarla en una ausencia de jurisdicción?

*El Derecho permite ficciones si no son absurdas.* La verdad es que desde el 18 de abril de 1991, en ocasión de la vista sobre causa probable para el arresto, el Senador Rexach Benítez y sus abogados fueron notificados de estas seis (6) denuncias y conocían su contenido. Como expresamente reconoció el tribunal de instancia al tomar conocimiento judicial, las mismas formaron parte de los autos, discusión y mandato en *Pueblo v. Rexach Benítez*, 130 D.P.R. 273 (1992). La circunstancia de que inicialmente las denuncias fueron numerosas y, por ende, los expedientes complejos, no constituye fundamento jurídico que avale y configure una ausencia de jurisdicción.

## III

En el caso de autos se cumplieron sustancialmente los requisitos esenciales del debido proceso de ley a tono con el esquema jurisprudencial prevaleciente.

Las razones brindadas por la mayoría para sacar temporeramente del tribunal de instancia estas seis (6) denuncias y devolverlas al Ministerio Público —sin estar "impedido de presentar una nueva solicitud de vista preliminar en alzada" con las denuncias correspondientes— son pueriles y carentes de sustancialidad. Ese trámite es un ritual fútil, innecesario e incomprensible que pertenece a una época supuestamente superada por los tribunales.

Una vez reconocido lo realmente acontecido en alzada, en su justa perspectiva la cuestión quedó reducida a un defecto subsanable e inconsecuente. *Sin rodeos, la mayoría debió corregirlo con una simple orden dirigida a la Secretaría para que le elevaran al Juez Torres Caraballo las denuncias y éste dictaminara la existencia o no de causa probable a la luz de la prueba estipulada.* "Lo demás", al

decir del poeta Luis Lloréns Torres, "es humo esfumándose en el cielo".

## IV

Establecida la jurisdicción, reiteramos nuestro firme criterio de que "existe un *fundamento aparentemente genuino (colorable basis)* de que estamos prima facie ante un encausamiento criminal selectivo, por razones políticas, impermisible". (Énfasis en el original.) *Pueblo v. Rexach Benítez,* supra, pág. 322, opinión concurrente y disidente.

Está fundamentado en el mismo análisis de nuestro disentir en *Hernández Colón v. Srio. de Hacienda,* 115 D.P.R. 145, 163 (1984): curiosamente la investigación se originó en supuestos informes de prensa; no hubo pesquisa rutinaria ni se inició por estar escrutándose una muestra de todos los senadores —de mayoría y de minoría— y la singularización se adoptó y concentró en el Senador Rexach Benítez, portavoz de la entonces minoría del Partido Nuevo Progresista (P.N.P.), quien conjuntamente con el único senador del Partido Independentista Puertorriqueño (P.I.P.) fiscalizaban vigorosamente la obra gubernamental.

Salvo la condición de adversario político del Senador Rexach Benítez, no hemos podido detectar ningún denominador común *objetivo y neutral* que sirviera de sostén racional para justificar la necesidad de crear una *Comisión Especial,* pronta investigación e inmediata remisión al Secretario de Justicia, a pesar de haber existido desde esa época serios señalamientos de irregularidades *análogas* contra otros senadores, incluso del Partido Popular Democrático (P.P.D.). De hecho, en ese epicentro político, ello movió a la Comisión Especial a no adjudicar los "méritos del caso" y a declinar ejercer toda su autoridad constitucional debido a la ausencia de "un ordenamiento que garantice una aplicación sistemática y justa, libre de toda sombra de

partidismo o parcialidad". Informe de la Comisión Especial, 29 de diciembre de 1989, pág. 3.

Distinto al parecer inicial del respetable juez de instancia, estos hechos sobre los cuales hoy día no hay controversia —diáfanamente surgen de toda la prueba ahora estipulada— le obligan a examinar y a decidir si el Ministerio Fiscal ha demostrado que estas denuncias criminales —en especial por su origen y el momento (*timing*) en que se hicieron— no estuvieron predicadas en un objetivo caprichoso (*invidious objective*); llanamente, por razones político-partidistas *pre eleccionarias*.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

La posición que asume una mayoría de los integrantes del Tribunal en el presente caso —avalada la misma, de manera principal, por el Juez Presidente Señor Andréu García y los Jueces Asociados Señores Hernández Denton y Alonso Alonso— *es una que éstos nunca debieron suscribir.* Dicha posición mayoritaria parece ponerle fin al caso, pero no lo hace; parece ser una que favorece a los acusados recurridos, pero no es así; parece ser una jurídicamente correcta, pero no lo es; parece ser una que hace cumplida justicia, pero no logra alcanzar dicha anhelada meta; la misma, en síntesis, parece enaltecer la imagen de este Tribunal, pero lo que hace es obscurecerla.

I

La acción del Departamento de Justicia de Puerto Rico, entonces bajo la dirección del Lcdo. Héctor Rivera Cruz, de radicar cargos criminales contra los recurridos Roberto Rexach Benítez y Ana M. Millán Álvarez data de aproxi-

madamente tres años. La misma no ha logrado, al día de hoy, rebasar la etapa de vista preliminar. La referida acción fue el producto de una *cruda y burda persecución política* que contra el recurrido Rexach Benítez desataron e incoaron varios miembros de la pasada Asamblea Legislativa de Puerto Rico y algunos funcionarios de la pasada administración de gobierno. Así lo *expresamos, denunciamos* y *fundamentamos* en la opinión disidente que emitiéramos el día 22 de abril de 1992 en los recursos consolidados CE-91-447 y CE-91-513, *Pueblo v. Rexach Benítez*, 130 D.P.R. 273 (1992).

En dicha ocasión expresamos, en lo pertinente, que:

Si este Tribunal, ante una clara situación de procesamiento criminal selectivo y discriminatorio —violatoria de la Sec. 1 del Art. II de nuestra Constitución, ante— se hace de la "vista larga", *no sólo permite que impunemente se viole la Constitución, sino que se convierte en cómplice de ello.*

Ante una violación constitucional de esta magnitud, *este Tribunal tiene el deber ineludible de buscar una vía decisoria procesal que reivindique adecuadamente los derechos violados.* Véase *Noriega v. Gobernador*, 122 D.P.R. 650 (1988). Dicho remedio, en nuestra opinión, debe de ser *el archivo de los cargos criminales* radicados en el presente caso. *Ese curso decisorio es la única forma de ponerle fin, de una vez y por todas, a esta inconstitucional práctica de persecución política.* Hoy se persigue al Senador Rexach Benítez; *mañana, puede ser a cualquier otro de los ciudadanos de este País.*

El foro judicial *ni* es colonia de las Ramas Ejecutiva y Legislativa *ni* puede convertirse en cómplice de las actuaciones inconstitucionales de éstas. (Énfasis en el original.) *Pueblo v. Rexach Benítez*, supra, págs. 343–344.

Ello no obstante, *y haciendo caso omiso de la abundante evidencia de procesamiento político selectivo a la que hiciéramos referencia en la citada opinión disidente*, una mayoría de los integrantes del Tribunal resolvió entonces devolver el caso al tribunal de instancia para la celebración de vistas bajo las disposiciones de las Reglas 6 y 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. *Sucedió lo pronosticable*: no sólo se determinó *carencia absoluta* de causa pro-

bable para arrestar en cuanto a la mayoría de los cargos que pesaban contra los recurridos, sino que se determinó *ausencia* de causa probable para radicar acusación, al amparo de lo dispuesto por la citada Regla 23, en relación a seis (6) cargos por el delito de apropiación ilegal agravada, determinación realizada por un magistrado del Tribunal de Distrito.

Inconforme, y fiel a la trayectoria de persecución política comenzada, el Departamento de Justicia "acudió en alzada", el 18 de junio de 1992, ante un magistrado del Tribunal Superior en revisión de la referida determinación de no causa probable en cuanto a los seis (6) cargos de apropiación ilegal agravada; ello en virtud de las disposiciones de la Regla 24 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. En dicha ocasión, el Ministerio Fiscal acordó y/o estipuló con la representación legal de los recurridos someter el caso, conforme el argot popular, "por el expediente". Esto es, a base de una serie de declaraciones juradas, y documentación, obrantes en el expediente fiscal; acción que cualquier abogado con alguna experiencia en el campo de lo penal reconoce inmediatamente como una "entrega o rendición" del Estado. En otras palabras, y dicho de otra forma, un reconocimiento de que no cuenta con prueba suficiente para sostener su caso. Procede que se enfatice, en adición, que entre la documentación sometida por estipulación ante el referido magistrado, la defensa sometió evidencia sobre la persecución política o procesamiento selectivo habido en el caso.

Habiendo quedado *sometido* el asunto, para resolución final por el magistrado, *sucedió algo inaudito*. En lugar de resolver el caso de una forma u otra —esto es, determinando existencia o ausencia de causa probable en los méritos o determinando que lo procedente en derecho lo era el archivo del caso por razón de la persecución política habida— el magistrado declaró *sin lugar* la solicitud del Estado de vista preliminar en alzada por el fundamento de que

carecía de jurisdicción para considerar la misma en vista del hecho de que el Ministerio Público no le había sometido, con la referida solicitud, las denuncias originales relativas a los seis (6) cargos por el delito de apropiación ilegal.

Imputándole haber errado al así resolver, y calificando el dictamen emitido por el magistrado de instancia como "asombroso" y "poco menos que incomprensible" (Petición de *certiorari*, págs. 3 y 4), la Oficina del Procurador General de Puerto Rico recurrió ante este Tribunal en revisión de la referida determinación. Mediante Resolución, de fecha 30 de octubre de 1992, expedimos el auto de *certiorari*.

## II

Si "asombroso y poco menos que incomprensible" (Petición de *certiorari*, págs. 3-4), en palabras de la Procuradora General de Puerto Rico, fue el dictamen del magistrado de instancia, ¿con qué adjetivos puede calificarse el proceder de la mayoría de los integrantes del Tribunal en el día de hoy? Nos abstenemos, por razones de prudencia judicial colegiada, de calificar la misma.

La opinión concurrente y de confomidad del Juez Asociado Señor Hernández Denton, en la cual *se apoya* la sentencia mayoritaria hoy emitida y la cual *suscriben* el Juez Presidente Señor Andréu García y el Juez Asociado Señor Alonso Alonso, nos habla —*innecesariamente, como veremos más adelante*— de que: "la existencia de algún tipo de acusación formal es un requisito jurisdiccional e irrenunciable para poder encausar criminalmente a una persona" (opinión concurrente y de conformidad, págs. 92-93); de que en Puerto Rico "hemos resuelto que los tribunales asumen jurisdicción sobre los imputados en casos criminales en virtud de la acusación o denuncia presentada" (íd., pág. 93); que gran "parte de la normativa de la denuncia encuentra sus raíces en imperativos constitucionales" (íd.);

que entre "las garantías procesales mínimas ... se encuentra el derecho a una debida notificación" (íd., pág. 94); y que en adición "de la función de notificar los cargos al imputado, la denuncia cumple otras dos (2) funciones: la de evitar la doble exposición y la de facilitar la revisión judicial" (íd.). *Ello es enteramente correcto; no tenemos objeción alguna a lo antes expresado.*

*Ahora bien, ¿que tienen que ver dichos principios en la correcta solución del presente caso?* En el mismo *no* existe un problema de violación de derechos constitucionales por razón de falta de notificación al imputado de los hechos que se alega él cometió, o de doble exposición, o uno que impida la revisión judicial. Los recurridos Rexach Benítez y Millán Álvarez *conocen* los hechos que se le imputan; éstos tienen *copia* de las denuncias. De hecho, hasta este Tribunal tiene *copia* de las mismas.([1]) En el presente caso, repetimos y enfatizamos, *no* hay, *ni* habrá, problema alguno de falta de notificación o situación alguna que pueda impedir un planteamiento de doble exposición o que impida la revisión judicial del mismo en el futuro por razón de desconocimiento, por parte de los recurridos, de los hechos que se le imputan. Tampoco la defensa ha hecho un planteamiento a esos efectos. Los pronunciamientos de la mayoría, referentes a los antes mencionados principios, *apenas logran rebasar el umbral de lo inútil, de lo inconsecuente y de lo inaplicable.*

### III

El presente caso *no* adolece del defecto de falta de una denuncia. En el mismo *existen* las denuncias correspondientes a los seis (6) cargos de apropiación ilegal agravada que se le imputan a los recurridos Rexach Benítez y Millán Álvarez. *Los originales de esas denuncias están donde tie-*

---

([1]) Como parte de los anejos o *exhibit* de los Recursos CE-91-447 y CE-91-513.

*nen que estar: en el expediente del Tribunal de Distrito correspondiente a la vista original de causa probable que en dicho foro se celebrara*; vista en la cual el magistrado que presidió la misma determinó ausencia de causa probable para acusar bajo las disposiciones de la citada Regla 23 de Procedimiento Criminal. Dicha determinación de no causa probable fue la que el ministerio público revisó ante el magistrado del Tribunal Superior, ello bajo la autoridad o facultad que le concede la Regla 24 de Procedimiento Criminal, *supra*.

Todo lo que tenía que hacer el magistrado del Tribunal Superior, ante quien se señaló la vista preliminar en alzada y ante el cual las partes acordaron someter el caso "por el expediente", *era tomar conocimiento judicial del expediente del Tribunal de Distrito correspondiente a la vista original de causa probable y/o solicitar que se le remitiera dicho expediente a su consideración.* Véanse: Regla 11(A)(2) de Evidencia, 32 L.P.R.A. Ap. IV; *Asoc. de Periodistas v. González*, 127 D.P.R. 704 (1991); Art. V, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1;(²) Sec. 1 de la Ley Núm. 11 de 24 de julio de 1952, conocida como la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, 4 L.P.R.A. sec. 1.(³)

Aparte de y en adición a lo antes expresado, debe recordarse que este Tribunal ha resuelto que la vista preliminar

---

(²) Dispone:

"Los tribunales de Puerto Rico constituirán *un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración.* La Asamblea Legislativa, en cuanto no resulte incompatible con esta Constitución, podrá crear y suprimir tribunales, con excepción del Tribunal Supremo, y determinará su competencia y organización." (Énfasis suplido.) Art. V, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 355.

(³) La referida Sec. 1 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico establece que:

"El poder judicial del Estado Libre Asociado de Puerto Rico residirá en *un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración* compuesto por el Tribunal Supremo como tribunal de última instancia, y por el Tribunal de Primera Instancia, los que conjuntamente constituirán el Tribunal General de Justicia.

"El Estado Libre Asociado de Puerto Rico queda por la presente constituido en *un solo distrito judicial*, sobre todo el cual el Tribunal General de Justicia ejercerá su poder y autoridad." (Énfasis suplido.) 4 L.P.R.A. sec. 1.

a nivel del Tribunal de Distrito, autorizada por la Regla 23 de Procedimiento Criminal, *supra*, y la vista preliminar "en alzada", autorizada por la Regla 24 de Procedimiento Criminal, *supra*, "son *parte integral de la acción penal* seguida contra el imputado" de delito. *Pueblo v. Rivera Colón*, 119 D.P.R. 315 (1987); *Pueblo v. Félix Avilés*, 128 D.P.R. 468 (1991); ello al extremo de haber resuelto este Tribunal en *Pueblo v. Félix Avilés*, supra, que —no obstante el hecho de haberse determinado no causa probable a nivel del Tribunal de Distrito y haberse, por ende, exonerado al imputado— la fianza originalmente prestada por éste continua en vigor, a pesar de la exoneración decretada, hasta que finalice la "acción penal" seguida contra el imputado. *Si ello es así en cuanto a la fianza, ¿no se aplica el mismo razonamiento en cuanto a la denuncia?*

Ante este claro e irrefutable cuadro jurídico, la mayoría del Tribunal resuelve que la solicitud de vista preliminar en alzada en que no se acompaña el original de la denuncia habida en el caso es una "incompleta", defecto que tiene la consecuencia de impedir, *de momento*, la celebración de la vista preliminar, pero que "concluido este proceso apelativo, y conforme con el mandato de la sentencia de esta Curia, *corresponde al Ministerio Público*, en el ejercicio de su discreción, *decidir si prosigue* con el encausamiento de los imputados mediante la presentación de una *nueva* solicitud de vista preliminar acompañada de las respectivas denuncias". (Énfasis suplido.) Opinión concurrente y de conformidad, pág. 100. *"Cosas veredes", dijo el filósofo en tono jocoso.*

Curiosamente, la mayoría tiene "el cuidado" de aclarar, y enfatizar, que su decisión "no equivale a una adjudicación en los méritos" (Sentencia) y que, por ende, concluido este proceso apelativo, el "Ministerio Público no est[ará] impedido de presentar una nueva solicitud [con] las denuncias correspondientes". Íd. *Dicho de otra manera*, se devuelve el caso para que sea el *actual* Departamento de Jus-

ticia el que tenga que tomar la decisión sobre si se procesa o no a los recurridos Rexach Benítez y Millán Álvarez. *Nuevamente, y por razones de prudencia judicial colegiada, nos abstenemos de comentar al respecto.*

## IV

En síntesis, *la ruta decisoria en el presente caso es una sola.* Esto es, aquella que señaláramos el 22 de abril de 1992: *ordenar el archivo y sobreseimiento de los cargos imputados por razón de que la radicación de los mismos obedeció a un crudo acto de persecución política y/o de procesamiento selectivo*; acción que, conforme expresáramos entonces, *viola* las disposiciones del Art. II, Sec. 1 de la Constitución del Estado Libre Asociado, *supra, y, en relación con la cual, este Tribunal tiene el deber ineludible de proveer una vía decisoria procesal que reinvindique adecuadamente los derechos violados.* Véase *Noriega v. Gobernador*, supra. La mayoría se niega a así hacerlo. *Es por ello que disentimos.*